<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KEITH R. JACKSON,          :
                           :     Civil Action No. 04-5772 (GEB)
          Plaintiff,       :
                           :
     v.                    :     **OPINION**
                           :
BRIAN HUGHES,              :
et al.,                    :
                           :
          Defendants.      :

**APPEARANCES:**

Keith R. Jackson, Plaintiff <u>pro</u> <u>se</u>
526948
Mercer County Correctional Center
P.O. Box 8068
Trenton, New Jersey 08650

RECEIVED

MAY 1 9 2005

AT 8:30 _____M
WILLIAM T. WALSH
CLERK

**BROWN, Jr.**, District Judge

        Plaintiff Keith R. Jackson, a prisoner currently confined at
Mercer County Correctional Center in Trenton, New Jersey, seeks
to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C.
§ 1983, alleging violations of his constitutional rights.  Based
on his affidavit of indigence and the absence of three qualifying
dismissals within 28 U.S.C. § 1915(g), the Court will grant
Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to
28 U.S.C. § 1915(a) and order the Clerk of the Court to file the
Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted for purposes of this review.

Plaintiff contends that Mercer County Executive Brian Hughes has failed to provide sufficient funds to provide an adequate law library and to alleviate overcrowding.

Plaintiff contends that Warden Shirley Tyler has failed to make the law library adequate, has denied those of Islamic faith the right to practice their faith, and has failed to alleviate overcrowding.

Plaintiff contends that the Head of Program Services Linda Rogers has failed to provide an adequate law library and that she held his outgoing indigent legal mail for several weeks resulting in his being denied a judgment.

Plaintiff seeks monetary damages and injunctive relief.

2

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in forma pauperis</u> or prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in forma pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>  Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief.[1]

---

[1] <u>Cf. Alston v. Parker</u>, 363 F.3d 229, 233-34 and n.6 (3d Cir. 2004) (a plaintiff "need not plead facts," so long as the complaint meets the notice pleading requirements of Rule 8 of the

3

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

---

Federal Rules of Civil Procedure); Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004) (clarifying Alston, a complaint must plead facts sufficient at least to "suggest" a basis for liability).

4

injured in an action at law, suit in equity, or other
proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law. West v. Atkins, 487 U.S. 42, 48
(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

### IV.  ANALYSIS

### A.   The Overcrowding Claim

The Eighth Amendment to the United States Constitution,
applicable to the individual states through the Fourteenth
Amendment, prohibits the states from inflicting "cruel and
unusual punishments" on those convicted of crimes. Rhodes v.
Chapman, 452 U.S. 337, 344-46 (1981).   This proscription against
cruel and unusual punishments is violated by the "unnecessary and
wanton infliction of pain contrary to contemporary standards of
decency." Helling v. McKinney, 509 U.S. 25, 32 (1993).   It is
well settled that "the treatment a prisoner receives in prison
and the conditions under which he is confined are subject to
scrutiny under the Eighth Amendment." Id. at 31.

To state a claim under the Eighth Amendment, an inmate must
allege both an objective and a subjective component. Wilson v.
Seiter, 501 U.S. 294, 298 (1991).   The objective component

5

mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for

6

their offenses against society.  Id. at 347.  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff's conclusory allegation of overcrowding is not sufficient to state a claim for violation of the Eighth Amendment.  Plaintiff will be granted leave to amend.

B.   The Free Exercise Claim

The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, inter alia, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof... ."  U.S. Const. amend. I.  "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "All prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and

7

Fourteenth Amendment.'" Small v. Lehman, 98 F.3d 762, 765 (3d
Cir. 1996) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).

"The mere assertion of a religious belief does not
automatically trigger First Amendment protections, however.  To
the contrary, only those beliefs which are both sincerely held
and religious in nature are entitled to constitutional
protection." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000).
See also Sutton v. Rasheed, 323 F.3d 236, 250-51 (3d Cir. 2003).

Once such a sincerely held religious belief is demonstrated,
an inmate may establish that a prison regulation or practice
violates the right to free exercise of religion by showing that
it violates the "reasonableness test" set forth in Turner v.
Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S. at 349.[2]
The standards delineated in Turner and O'Lone indicate that when
a prison regulation or practice encroaches upon prisoners' rights
to free exercise of their religion, the regulation is valid if it
is reasonably related to a legitimate penological interest.
Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349.   The

---

[2] More recently, in Employment Division, Dept. of Human
Resources v. Smith, 494 U.S. 872, 878-79 (1990), the Supreme
Court held that neutral laws of general applicability that
incidentally impinge on religious practices do not violate the
Free Exercise Clause.  No federal Court of Appeals has yet held
that the Smith test supplants the Turner and O'Lone analysis in
the prison context.  See Levitan v. Ashcroft, 281 F.3d 1313 (D.C.
Cir. 2002) and cases cited therein.  See also Fraise v. Terhune,
283 F.3d 506, 515 n.5 (3d Cir. 2002) (acknowledging the issue,
but declining to reach it in the absence of either party urging
application of Smith).

reasonableness standard involves the examination of the following four factors:  (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at <u>de minimis</u> cost to valid penological interests.  <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 415-18 (1989); <u>Turner</u>, 482 U.S. at 89-91.  However, prison administrators need not choose the least restrictive means possible in trying to further legitimate penological interests.  <u>Thornburgh</u>, 490 U.S. at 411.  Moreover, "[i]f the connection between the regulation and the asserted goal is arbitrary or irrational, [however,] then the regulation fails, irrespective of whether the other factors tilt in its favor."  <u>Shaw v. Murphy</u>, 532 U.S. 223, 230-31 (2001).

In addition, prisoners' rights to exercise their religion are protected by statute.

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that
compelling governmental interest.

42 U.S.C. § 2000cc-1.

Here, Plaintiff alleges that Defendant Warden Shirley Tyler
denies those of the Islamic faith any opportunity to practice
their faith.  Plaintiff adequately pleads that his constitutional
and statutory rights to exercise his religion have been violated
by Warden Shirley Tyler.  This claim will be permitted to
proceed.

C.    The Access to Courts Claims

The constitutional right of access to the courts is an
aspect of the First Amendment right to petition the government
for redress of grievances.  Bill Johnson's Restaurants, Inc. v.
NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional
guarantee of due process of law has as a corollary the
requirement that prisoners be afforded access to the courts in
order to challenge unlawful convictions and to seek redress for
violations of their constitutional rights.  Procunier v.
Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds,
Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also
Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access

10

to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  <u>See</u> <u>Lewis</u>, 518 U.S. at 348-55 and n.3 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997). There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  ...  [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim.  He might show, for example, that a

11

complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.  ...  This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying.  [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

Here, the claim that Defendants have violated Plaintiff's right of access to the courts because of an inadequate law library fails to state a claim.  The allegation that Defendant

12

Linda Rogers failed to mail Plaintiff's legal mail for several
weeks leading to a judgment against him is sufficient to survive
dismissal at this preliminary stage of the litigation and will be
permitted to proceed.

V.   CONCLUSION

For the reasons set forth above, the claim that Warden
Shirley Tyler denies Plaintiff the right to free exercise
of his religion, and the claim that Linda Rogers deprived
Plaintiff of his right of access to the courts by refusing to
mail his legal mail, may proceed.  All other claims will be
dismissed without prejudice for failure to state a claim,
pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and 42 U.S.C.
§ 1997e(c).  However, because it is conceivable that Plaintiff
may be able to supplement his pleading with facts sufficient to
cure the deficiencies of his Complaint, the Court will grant

Plaintiff leave to file an amended complaint.[3]  An appropriate

order follows.

Garrett E. Brown, Jr.
United States District Judge

Dated: *May 18, 2005*

---

[3] Plaintiff should note that when an amended complaint is
filed, the original complaint no longer performs any function in
the case and "cannot be utilized to cure defects in the amended
[complaint], unless the relevant portion is specifically
incorporated in the new [complaint]."  6 Wright, Miller & Kane,
Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes
omitted).  An amended complaint may adopt some or all of the
allegations in the original complaint, but the identification of
the particular allegations to be adopted must be clear and
explicit.  Id.  To avoid confusion, the safer course is to file
an amended complaint that is complete in itself.  Id.

14